# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Cooney v. Rossiter*, 2012 IL App (1st) 102129

---

| | |
|---|---|
| Appellate Court Caption | DEBORAH A. ORLANDO COONEY, RAYMOND L. WIETRZYKOWSKI, ROSE M. WIETRZYKOWSKI, AND CHRISTOPHER ORLANDO, Plaintiffs-Appellants, v. LYLE H. ROSSITER, JR., Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-2129 |
| Filed | August 10, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The psychiatrist appointed to serve as a psychological evaluator in one plaintiffs' divorce and custody proceedings was entitled to absolute immunity from plaintiffs' action for intentional infliction of emotional distress. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-6089; the Hon. Jeffrey Lawrence, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Zimmerman, Jr., and Adam M. Tamburelli, both of Zimmerman Law Offices, P.C., of Chicago, for appellants.

Brian T. Henry, D. Scott Rendleman, and Scott L. Howie, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellee.

Panel

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Presiding Justice Epstein and Justice McBride concurred in the judgment and opinion.

### OPINION

¶ 1     Plaintiffs Deborah Orlando Cooney, Raymond Wietrzykowski, Rose Wietrzykowski and Christopher Orlando appeal from a judgment granting defendant Lyle Rossiter's motion to dismiss based on a finding of absolute immunity and *res judicata* entered by the circuit court of Cook County. On appeal the plaintiffs argue the trial court erred because: (1) their claim is not barred by *res judicata*, and (2) court-appointed psychological evaluators are not immune from lawsuits in Illinois.

¶ 2     For the reasons set forth below, we affirm.[1]

¶ 3                 BACKGROUND

¶ 4     Plaintiffs Deborah A. Orlando Cooney, Raymond L. Wietrzykowski and Rose M. Wietrzykowski filed their first amended complaint on November 20, 2008, alleging intentional infliction of emotional distress by defendant Lyle H. Rossiter. The plaintiffs' allegations stem from Deborah's 1998 divorce and subsequent custody proceeding involving her two children, Christopher and Jonathan, born during her marriage to ex-husband Lorenzo Orlando. Rossiter was the court-appointed psychological evaluator in the parties' custody proceeding.

¶ 5     Deborah was granted custody of her two children in the judgment for dissolution of marriage. In 2001, Lorenzo filed a petition for a change of custody. Deborah filed a motion for the appointment of a psychological evaluator, in 2004, for the purpose of formulating written recommendations concerning the custodial arrangements for her children. The trial court appointed Rossiter, a general and forensic psychiatrist, as the evaluator, pursuant to section 605 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/605 (West 2002)).

---

[1]Justice Joseph Gordon participated in this case. Following his demise, Presiding Justice Epstein has replaced him on the panel and has reviewed the briefs.

¶ 6    In formulating his evaluation, Rossiter interviewed Deborah, Deborah's mother Rose, Deborah's father Raymond, and the children. In his evaluation, Rossiter opined that Deborah, Rose and Raymond suffer from the delusional disorder Munchausen's by proxy syndrome and that Christopher suffered significant mental injury as a result. Rossiter opined that Christopher's mental and emotional injuries constituted child abuse by Deborah and her parents. Rossiter opined that Christopher and Jonathan should be removed from Deborah's custody and that she and her parents undergo psychiatric treatment.

¶ 7    The plaintiffs allege that Rossiter rendered erroneous and fraudulent conclusions in his evaluation and failed to perform psychological testing. The plaintiffs allege that Rossiter intended for the conclusions in his evaluation to injure the plaintiffs. The plaintiffs allege the trial court granted Lorenzo's petition for change in custody based solely on Rossiter's written evaluation. The plaintiffs allege Rossiter intentionally and deliberately made false statements to an Illinois Department of Children and Family Services (DCFS) investigator resulting in a DCFS finding indicating Deborah for child abuse. An administrative law judge affirmed the DCFS indicated finding of child abuse.

¶ 8    The plaintiffs then filed, under section 1983 of the Civil Rights Act of 1991 (42 U.S.C. § 1983 (2006)), a class-action civil rights lawsuit in federal court on May 16, 2007. The federal district court dismissed the lawsuit, finding the defendants immune, stating:

> "[I]t is well-established that court-appointed psychological evaluators are 'protected by the same immunity extended to judges and other judicial officers.' " *Cooney v. Rossiter*, No. 07 C 2747, slip op. at 7 (N.D. Ill. Aug. 20, 2008) (quoting *Bartlett v. Weimer*, 268 F.2d 860, 862 (7th Cir. 1959)).

¶ 9    The plaintiffs allege that they are not delusional and do not suffer from Munchausen's by proxy syndrome and have not committed child abuse. The plaintiffs allege Rossiter's conduct was extreme and outrageous and caused Deborah, Rose and Raymond to lose any contact and visitation with the children. The plaintiffs allege Rossiter's conduct caused Deborah to lose her job as a nurse and caused all the plaintiffs to suffer severe and extreme mental and emotional distress.

¶ 10    On May 4, 2009, Rossiter filed a motion under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)) to dismiss plaintiffs' first amended complaint, claiming he is immune from suit in this matter and that the lawsuit is barred by *res judicata*.

¶ 11    Plaintiffs filed a second amended complaint on September 21, 2009, adding Christopher, Deborah's son, as a plaintiff. Rossiter filed a section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 2008)) plaintiffs' second amended complaint on October 2, 2009, setting forth the same claims as in his earlier motion to dismiss.

¶ 12    The trial court granted defendant's motion to dismiss, finding the lawsuit barred by *res judicata* and absolute immunity for Rossiter. In regard to immunity, the trial court relied on the decision by the federal district court, stating:

> "The rationale for immunity under these circumstances is that officers of the court ought to be able to testify as to their honest opinions without fear of retribution, and this lawsuit is retribution big time."

¶ 13    The plaintiffs' motion to reconsider was denied and they appeal the trial court order

granting defendant's motion to dismiss.

¶ 14                                    ANALYSIS

¶ 15    A section 2-619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters appearing on the face of the complaint or established by external submissions that act to defeat the claim. *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569-70 (2002). The court construes the pleadings and supporting documents in the light most favorable to plaintiffs. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008). The issue on appeal is " 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Id.* (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993)). Review of a section 2-619 motion to dismiss is *de novo. Czarobski*, 227 Ill. 2d at 369.

¶ 16    Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). *Res judicata* applies to bar issues that were actually decided in the first action, as well as matters that could have been decided. *La Salle National Bank v. County Board of School Trustees*, 61 Ill. 2d 524, 529 (1975).

¶ 17    Three requirements must be satisfied for the doctrine of *res judicata* to apply: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of causes of action; and (3) an identity of the parties or their privies. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008).

¶ 18    The first element of *res judicata* was met when the district court issued a final judgment on the merits in the plaintiffs' section 1983 lawsuit in granting Rossiter's motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). The judgment was subsequently affirmed by the Seventh Circuit. *Cooney v. Rossiter*, 583 F.3d 967, 972 (7th Cir. 2009).

¶ 19    In respect to the second element of *res judicata*, there is an identity of causes of action because the section 1983 lawsuit and the intentional infliction of emotional distress lawsuit both arose from the same set of operative facts. *Rein*, 172 Ill. 2d at 339.

¶ 20    Finally, there is an identity of parties because Deborah and Rossiter are the same parties in both lawsuits and Deborah's parents and son are her privies. Privity exists between parties who adequately represent the same legal interests. *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992).

¶ 21    In plaintiffs' reply brief, they cite *Benton v. Smith*, 157 Ill. App. 3d 847 (1987), for the proposition that under Illinois law, "if the earlier case on which an assertion of *res judicata* is based is a class action, *res judicata* will *not* bar individual claims in a subsequent case."

¶ 22    However, a review of *Benton* reveals that in that case we found that an earlier class action lawsuit, of which the plaintiff was a member, was not *res judicata* to plaintiff's subsequent lawsuit based on the differing facts of the two lawsuits, not merely because the earlier lawsuit was a class action, as the plaintiffs claim here. *Benton*, 157 Ill. App. 3d at 853.

¶ 23    In *Benton*, the plaintiff's personal property was damaged when frozen water pipes in her apartment burst after the heat stopped working. *Id.* at 850. The plaintiff submitted a property damage form to the defendant Chicago Housing Authority (CHA) and waited for a response. Meanwhile, a group of CHA tenants filed a class action lawsuit against the CHA claiming they had been denied rent abatements as required by their lease. *Id.* The plaintiff in *Benton* joined the class action lawsuit. As a result of a settlement of the class action, the plaintiff received a 45-day rent credit. Shortly before receiving the rent credit from the class action settlement, a CHA attorney wrote the plaintiff a letter stating that her claim for property damages was denied and he advised her to seek legal action through the courts. *Id.* at 851.

¶ 24    We found that the class action lawsuit did not bar the plaintiff's lawsuit for property damage under *res judicata* because the rent abatement issue was not related to the property damage lawsuit and the property claim could not have been litigated in the rent-abatement class action lawsuit. *Id.* at 853.

¶ 25    Here, unlike *Benton*, the section 1983 claim and the claim for intentional infliction of emotional distress arise out of the same set of operative facts. In the federal lawsuit, Deborah claimed the defendants, including Rossiter, violated her rights under the United States Constitution by engaging in misconduct during the custody proceedings. In her state lawsuit, Deborah claims Rossiter intentionally caused her emotional distress by engaging in misconduct during the custody proceedings. The evidence required to prove each case is essentially the same, unlike *Benton*, where "[t]here is a wide gap between the evidence needed to establish the two actions." *Id.* at 855.

¶ 26    Both claims could have been brought as part of the federal action because Deborah's coplaintiffs in the class action also claimed extreme and intentional misconduct during custody proceedings and could have feasibly pleaded intentional infliction of emotional distress.

¶ 27    Under these circumstances, we find *res judicata* bars the plaintiffs' claim for intentional infliction of emotional distress.

¶ 28    Assuming, *arguendo*, that the federal suit is not *res judicata*, we find that the plaintiffs' claim fails because Rossiter is absolutely immune from lawsuit regarding his duties as a court-appointed psychological evaluator in the custody proceeding.

¶ 29    The plaintiffs claim that Illinois law does not provide immunity for court-appointed psychological evaluators in custody proceedings and that the federal court's decision to grant Rossiter immunity in the section 1983 suit is not applicable here.

¶ 30    While we recognize that the federal district court and subsequent Seventh Circuit rulings are not binding on us, the decisions of the lower federal courts are persuasive authority. *People ex rel. Ryan v. World Church of the Creator*, 198 Ill. 2d 115, 127 (2001). We find the Seventh Circuit's affirmation of the district court holding persuasive. See *Cooney*, 583 F.3d 967.

¶ 31    The Seventh Circuit found that Rossiter is entitled to absolute immunity because:

"[C]ourt appointed experts, including psychiatrists, are absolutely immune from liability for damages when they act at the court's direction." *Id.* at 970.

¶ 32    The Seventh Circuit found that court-appointed psychological evaluators like Rossiter are arms of the court and "deserve protection from harassment by disappointed litigants, just as judges do. Experts asked by the court to advise on what disposition will serve the best interests of a child in a custody proceeding need absolute immunity in order to be able to fulfill their obligations 'without the worry of intimidation and harassment from dissatisfied parents.' " *Id.* (quoting *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984)).

¶ 33    We agree with the Seventh Circuit's assessment that all of the alleged misconduct from plaintiffs' complaint occurred within the course of Rossiter's court-appointed duties and, thus, he is immune because he was acting at the court's direction. *Cooney*, 583 F.3d at 970.

¶ 34    We also cannot say that a finding of absolute immunity for a court-appointed psychological evaluator is contrary to Illinois law, as the plaintiffs suggest. Courts in Illinois have long held that anything said or written in a legal proceeding is protected by an absolute privilege. *Defend v. Lascelles*, 149 Ill. App. 3d 630, 633 (1986) (pleadings protected by absolute privilege against defamation actions).

¶ 35    A reasonable extension of the holding in *Defend* is to provide absolute immunity to court-appointed psychological evaluators. In *Defend*, the appellate court stated:

        "The privilege itself is steeped in public policy: it is uniformly recognized that the judicial system would best be served if persons with knowledge of relevant facts could report those facts to the court without fear of civil liability." *Id.* at 634.

¶ 36    We cannot say that a court-appointed psychological evaluator can perform his job effectively when there exists a fear of civil liability. As the court stated in *Defend*:

        "The law thus clearly allows for an absolute privilege where there exists a significant interest in protecting the type of speech involved." *Id.* at 635.

¶ 37    Just as courts in Illinois have long held that libelous material contained in a pleading is absolutely privileged, we find that material contained in a report provided by a court-appointed psychological evaluator is also absolutely privileged because there is a public interest in protecting these reports in a custody action. *Id.* at 636. As the Seventh Circuit stated in *Cooney*, the psychological evaluator is serving the best interests of the child and it is paramount that such service is performed without the threat of civil liability. *Cooney*, 583 F.3d at 970.

¶ 38    Furthermore, we recently recognized *Cooney* in *Vlastelica v. Brend*, 2011 IL App (1st) 102587, finding that a court-appointed child representative is absolutely immune from suit related to his court-appointed duties. In that case, the trial court appointed a child representative to represent the parties' child in a custody proceeding. After the custody proceeding and dissolution of marriage action was adjudicated, the child's mother filed a multicount complaint against the child representative and another defendant. The counts relating to the child representative include legal malpractice and intentional interference with custody rights. *Brend*, 2011 IL App (1st) 102587, ¶ 6. The plaintiff alleged that the child representative engaged in fraudulent conduct during the custody proceeding. The trial court granted the defendants' section 2-619 motion to dismiss finding absolute immunity for work performed as a child representative. *Id.* ¶ 16.

¶ 39    In affirming the ruling of the trial court in *Brend*, we found *Cooney* persuasive authority,

stating:

> "We also agree with *Cooney*'s holding that to best aid the court in its determination of the child's best interests, the child representative must be accorded absolute immunity so as to allow him to fulfill his obligations without worry of harassment and intimidation from dissatisfied parents." *Id.* ¶ 23 (citing *Cooney*, 583 F.3d at 970).

¶ 40    While *Brend* recognized *Cooney* for its finding that child representatives are absolutely immune from lawsuit, so do we recognize *Cooney* for its companion finding that court-appointed evaluators must be accorded absolute immunity so as to allow them to fulfill their obligations without worry of harassment and intimidation from dissatisfied parents. *Id.*

¶ 41                                  CONCLUSION

¶ 42    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 43    Affirmed.